**\*\* E-filed May 10, 2012 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HMBY, LP; and NADER AGHA,<br><br>       Plaintiffs,<br>   v.<br><br>CITY OF SOLEDAD; FRED LEDESMA;<br>and DOES 1-50,<br><br>       Defendants.<br>_____/ | No. C12-00107<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS**<br><br>**[Re: Docket No. 9]** |

Plaintiffs HMBY LC and its managing partner, Nader Agha (collectively "HMBY") sue the City of Soledad ("City") and its mayor, Fred Ledesma, alleging that Ledesma and the City improperly and discriminatorily prevented HMBY from bringing to fruition several large-scale development projects on land in the city and on unincorporated land adjacent thereto. HMBY originally brought this action in Monterey County Superior Court. Defendants removed on January 6, 2012 on the basis of federal question jurisdiction. Dkt. No. 1 ("Notice of Removal").

HMBY, a property developer, claims that defendants intentionally refused to process applications for two large developments that HMBY planned for land it owns near the City of Soledad. The first of these projects is a large, multi-use development that HMBY designed (the "Miravale II project"). Dkt. No. 1, Exh. A ("Complaint") ¶ 10. HMBY sold portions of the land for the Miravale II Project to other developers, who have successfully had their portions of the project approved and developed. Id. ¶¶ 11-12. HMBY and the City agreed in early 2007 that HMBY would

prepay $751,298 in sewage impact fees to allow the City to expand its water treatment facilities to accommodate the Miravale II project. Id. ¶¶ 16-19; see also Exhibit A to Complaint, "SIF Agreement." The SIF Agreement provides that HMBY (and the two other developers of the Miravale II project) would prepay the fees in return for the City's continued best efforts to annex the project land into the City and approve the necessary building permits for the project. SIF Agreement. The City has not annexed HMBY's portion of the land, nor has it approved HMBY's application for development.

The second project, owned entirely by HMBY, was also intended as a multi-use development, and would contain housing of several types, a hotel, commercial/retail space, schools, police and fire department substations, a recycled water plant, public park spaces, and a golf course (the "Miravale III Project"). Id. ¶ 23. HMBY alleges that the City promised to pay $50,000 for the preparation of an Environmental Impact Report ("EIR") for the project, but never proffered the money. Id. ¶¶ 27-30. The City convened a special panel to consider plaintiffs' requests for approval of its project plans or for reimbursement of the $801,298 it claimed it was owed by the city, but when mayor Fred Ledesma came into office, HMBY alleges he eliminated the committee, leaving plaintiffs' claims unresolved, Id. ¶¶ 21, 34, 40.

The City and Ledesma now move to dismiss claims 1 (for writ of mandate), 2 (for declaratory relief); the breach of contract claim (7, 9, 11), the estoppel claims (8, 10, 12), 13 (money had and received), and 14 (conversion). All parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(b). The motion has been fully briefed and is deemed suitable for hearing without oral argument. The March 20, 2012 hearing was vacated pursuant to Civil L. R. 7-1(b). Based on the moving papers and applicable legal authority, the court rules as follows.

LEGAL STANDARD

On motion, a court may dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). The statement must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007). However, only plausible claims for relief will survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 129

2

S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A claim is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1950.

In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint. Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The factual allegations pled in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)). However, the court cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)), amended on other grounds by 275 F.3d 1187 (9th Cir. 2001).

"A court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (internal citations omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). An amendment would be "futile" if there is no set of facts can be proved which would constitute a valid claim or defense. See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). A complaint may be dismissed with prejudice when plaintiff has "multiple opportunities to amend and [is] unable to cure the defects that required dismissal of [] previous complaints." Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1060 (9th Cir. 2008).

DISCUSSION

A. <u>Plaintiffs' First Claim for Writ of Mandate Against All Defendants</u>

A writ of mandate "may be issued by any court . . . to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station." Cal. Code Civ. Proc. § 1085(a). "The petitioner must demonstrate the public official or entity had a ministerial duty to perform, and the petitioner had a clear and beneficial right to performance." <u>AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health</u>, 197 Cal. App. 4th 693, 700 (Cal. App. 2d Dist. 2011). A ministerial act is "an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." <u>Id.</u> (citing <u>Rodriguez v. Solis</u>, 1 Cal. App. 4th 495, 501 (1991)). "[T]o authorize the issuance of a writ of mandamus the party sought to be coerced must be bound to act." <u>Plum v. Healdsburg</u>, 237 Cal. App. 2d 308, 317 (Cal. App. 1st Dist. 1965). "Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner." <u>Id.</u> at 700-01 (citing <u>Excelsior College v. Board of Registered Nursing</u>, 136 Cal. App. 4th 1218, 1238–123 (2006)).

Plaintiff contends that the defendants have a ministerial duty imposed by law "to act on and/or process the Apartment Tracts [of the Miravale II Project] and the Miravale III Project," and that the defendants have failed to act in accordance with that duty. Complaint ¶¶ 62-63. Defendants contend that the plaintiffs have failed to identify a legal duty that would compel defendants to act on plaintiffs' applications. Dkt. No. 9, p. 7. In their opposition to the motion to dismiss, plaintiffs argue at length that defendants' authority is inapposite, but make no effort to identify the legal source of the duty they claim defendants owe them. <u>See</u> Dkt. No. 10, pp. 1-5. The court agrees with defendants that where plaintiff has not identified any actual legal duty that would require them to act on plaintiffs' applications. Additionally, Cal. Code Civ. Proc. § 1086 requires that a petition for writ of mandate be issued upon a verified petition, and plaintiffs' complaint is unverified.

Accordingly, plaintiffs' first claim fails to state a claim and is DISMISSED with leave to amend.

B. <u>Plaintiffs' Second Claim for Declaratory Relief Against All Defendants</u>

4

An action for declaratory relief lies "when the parties are in fundamental disagreement over the construction of particular legislation, or they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law." <u>Alameda County Land Use Assn. v. City of Hayward</u>, 38 Cal. App. 4th 1716, 1723 (Cal. App. 1st Dist. 1995).

Plaintiffs correctly offer this statement of the law in their opposition to defendants' motion to dismiss. Dkt. No. 10, p. 5. However, they apparently fail to recognize that their complaint falls short of this standard because it does not identify any "particular legislation" or "applicable law" requiring determination by this court. Rather, they appear to want this court to determine whether or not the defendants have a duty to act on their applications for the Miravale II and III Projects. <u>See</u> Complaint ¶¶ 69-70. This is not an appropriate use of a claim for declaratory relief.

Accordingly, plaintiffs' claim for declaratory relief must be DISMISSED. Plaintiffs may amend this claim to identify some "particular legislation" or "applicable law," the validity of which "raises a pure question of law" that this court must answer. <u>See</u> <u>Alameda County Land Use Assn.</u>, 38 Cal. App. 4th at 1724.

C. <u>Plaintiffs' Breach of Contract Claims Against All Defendants</u>

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." <u>Careau & Co. v. Sec. Pacific Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1388 (1990).

a. *Plaintiffs' Seventh Claim for Breach of an Implied-in-Fact Contract*

Plaintiffs rather vaguely allege that they "advanced monies and effort as part of the usual court of conduct of the City's usual processing of applications for building permits" and that this created an implied-in-fact contract with Defendants. Complaint ¶ 98. Plaintiffs contend that their payments and efforts were a contractual performance requiring the defendants to "process the project reasonably, competently, and in accordance with law." <u>Id.</u> In their opposition brief, plaintiffs explain further that their alleged "performance" included the payment of fees associated with their applications, as well as the costs of completing an EIR, and the consulting fees plaintiffs paid to

nonparties for myriad services associated with the development of their proposals for the Miravale II and III projects. Dkt. No. 10, pp. 6-7, fn. 1; see also Complaint ¶ 45.

"An implied contract is one, the existence and terms of which are manifested by conduct," but differs from an express contract only by the manifestation of assent. 1 Witkin Sum. Cal. Law Contracts § 102. Defendants apparently misread plaintiffs' claim as asserting rights under the two written agreements between the parties (for payment of the sewer impact fees and for sharing the cost of an EIR for the Miravale III project), but plaintiffs contend that they are only addressing money and acts they performed outside the scope of those written agreements. Dkt. No 9, p. 11; Dkt. No. 10, p. 6. Defendants' argument, also renewed in their reply brief, that an implied contract cannot exist where an express contract does, fails to address the actual merits of plaintiffs' attempted claim for breach of an implied-in-fact contract. See Dkt. No. 11, p. 8.

Upon the court's review of the claim, plaintiffs contend that an implied-in-fact contract was created when plaintiffs expended the costs associated with the development of two large-scale land use proposals, which they then submitted for defendants' review. These allegations do not support a finding that any contract, express or implied, was created. Rather, plaintiffs seem to want to recover the cost of doing business by claiming that their efforts to generate property development proposals bound the defendants to perform by processing (and approving) the applications for the Miravale II and III projects. This court concludes that plaintiffs expended those costs at its own risk, as does every developer who purchases land in the hope that it can later sell that land and its plans for development to an entity willing to pay for the development. Plaintiff has not alleged facts that could logically support such a claim. Indeed, the court does not believe that plaintiffs could truthfully allege facts that would support a claim for breach of an implied contract even if this court were to grant leave to amend.

Accordingly, plaintiffs' claim for breach of implied in fact contract is DISMISSED, and because the court concludes that plaintiffs could not state a valid claim even if given leave to amend, the claim is dismissed without leave to amend.

    b. *Plaintiffs' Ninth and Eleventh Claims for Breach of Contract Against Ledesma*

1  Defendants argue, and plaintiffs concede, that the ninth and eleventh claims for breach of
2  contract should be dismissed as to defendant Ledesma, as he was not a signatory to the contracts in
3  question. Dkt. No. 9, p. 16; Dkt. No. 10, p. 14. Accordingly, plaintiffs' ninth and eleventh claims for
4  breach of contract are DISMISSED as to defendant Ledesma without leave to amend.

      D.   Plaintiffs' Eighth, Tenth, and Twelfth Claims for Estoppel Against All Defendants

Plaintiffs allege three claims for estoppel. First, they claim that they reasonably relied on defendants' "conduct [and] . . . past practices" when they expended the costs of developing their Miravale II and II Projects, to their detriment (the "eighth claim"). Complaint ¶¶ 103-08. Second, they argue that they reasonably relied on the City's express promise to provide $50,000 toward the cost of an EIR for the Miravale III project and accordingly paid for the production of the EIR, to their detriment (the "tenth claim"). Id. ¶¶ 115-19. Third, they claim that they reasonably relied on the City's express promise, "in conjunction with the SIF Agreement," that plaintiffs would be entitled to a reimbursement of the $751,298 plaintiffs paid in sewer impact fees if the Miravale II project was not built. Id. ¶¶ 126-29. Although plaintiffs do not specify in their complaint what type of estoppel they seek, their opposition brief explains that all three claims are for promissory, rather than equitable, estoppel. Dkt. No. 10, pp. 7-8.

The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Laks v. Coast Federal Savings & Loan Assn., 60 Cal.App.3d 885, 890, 131 Cal. Rptr. 836 (1976).

      a.   *Plaintiffs' Tenth and Twelfth Claims for Estoppel*

Plaintiff's tenth and twelfth claims for estoppel are based upon the written agreements between the parties for 1) fees the City's payment of $50,000 toward production of the EIR for the Miravale III project, and 2) plaintiffs' prepayment of sewer impact, respectively. Defendants argue that promissory estoppel is unavailable to plaintiffs for these claims because their only claimed reliance is for the act bargained for. Dkt. No. 9, p. 13. This is a correct statement of the law. Promissory estoppel "is inapplicable where the promisee's performance was requested by the promisor at the time the promise was made. Under such circumstances, the only reliance which can

make the promisor's failure to perform actionable is the promisee's doing what was requested. If that reliance was detrimental, it would constitute consideration." Healy v. Brewster, 59 Cal. 2d 455, 463 (Cal. 1963) (internal citations omitted).

Plaintiff's tenth claim, based on the City's agreement to provide $50,000 toward the cost of developing an EIR, quite clearly falls into the situation described by Healy. Plaintiffs claim that they paid for the EIR in reasonable reliance on the City's promise to provide $50,000—precisely what the written agreement says. Therefore, plaintiffs cannot state a claim for estoppel based upon this bargained-for exchange, as their appropriate claim is for breach of contract. Accordingly, the plaintiffs' tenth claim for estoppel must be DISMISSED, and because California law prohibits such a claim, amendment would be futile and the claim is dismissed without leave to amend.

However, plaintiff's twelfth claim for estoppel is different. Here, plaintiffs claim that the City promised that plaintiffs could be *reimbursed* for the prepaid fees if the Miravale II project was not completed. Complaint ¶ 127. But, the SIF Agreement provides that, should the relevant land not be timely annexed by the city, the parties would be able to negotiate an extension of the time for annexation, or agree to new terms "*whereby a credit against future sewer impact fees . . . will be provided by the City.*" SIF Agreement, p. 2 (emphasis added). Plaintiffs' claim for estoppel in this instance alleges that the City made a promise "in conjunction with the SIF Agreement" that goes beyond the scope of the written agreement. See Complaint ¶ 127. But, the court is unconvinced that plaintiffs' reliance was reasonable, given that the Agreement never mentions reimbursement and does not appear to allow for the possibility of reimbursement. Therefore, the twelfth claim for estoppel fails to state a claim and must be DISMISSED, but it is dismissed with leave to amend.

b. *Plaintiffs' Eighth Claim for Estoppel*

"[W]here the promisee's reliance was bargained for, the law of consideration applies; [but] . . . where the reliance was unbargained for[,] there is room for application of the doctrine of promissory estoppel." Healy, 59 Cal. 2d at 463. But, the alleged promise must be "clear and unambiguous in its terms." Laks, 60 Cal. App. 3d at 890. Plaintiff's eighth claim for estoppel alleges that "defendants' conduct, as well as their past practices" led plaintiffs to believe that defendants would "timely" process plaintiffs' applications if plaintiffs' paid for the development of those

8

applications. Complaint ¶ 104. However, plaintiffs offer no details about what promises, if any, were made by defendants to support plaintiffs' alleged reliance. On the facts as pled, the court can find no clear and unambiguous promise alleged by defendants. Accordingly, the plaintiffs' eighth claim for estoppel must be DISMISSED. However, the court cannot conclude that plaintiffs would be unable to truthfully state a viable claim if given the opportunity to amend, so, the claim is dismissed with leave to amend.

  E. <u>Plaintiffs' Thirteenth Claim for Common Counts: Money Had and Received Against All Defendants</u>

Plaintiffs claim that they gave $751,298 to the City "that was supposed to be reimbursed to plaintiffs in the event the Apartment Tracts [of the Miravale II project] did not come to fruition," and that the City instead "used the money for its own benefit." Complaint ¶¶ 131-32. "'The essential element of an action for money had and received is the allegation that the defendant had and received the money to and for the use and benefit of a plaintiff. . . . [I]t must appear that the money held by defendant is the property of plaintiff and that defendant is obliged in equity and good conscience to restore it to him.'" <u>Sandy v. McClure</u>, 676 F. Supp. 2d 866, 880 (N.D. Cal. 2009) (quoting <u>Macbeth v. West Coast Packing Corp.</u>, 83 Cal. App. 2d 96, 98, 187 P.2d 815 (Ct. App. 1947)).

Defendants first argue that because plaintiffs' eleventh claim for breach of the SIF Agreement was dismissed, this claim for common counts, an alternative means of seeking the same recovery demanded in plaintiffs' eleventh claim for relief, must also be dismissed. This is a correct statement of the law. When a common count is used as an alternative way of seeking the same recovery demanded in a specific [claim], and is based on the same facts," it does not survive if the underlying claim does not survive." <u>McAfee v. Francis</u>, 2011 U.S. Dist. LEXIS 83878, *6-7 (N.D. Cal. Aug. 1, 2011) (internal citations omitted). However, defendants only moved to dismiss the eleventh claim against Ledesma, so this proposition of law will only operate to dismiss the claim against Ledesma. Accordingly, the claim for common counts is DISMISSED against Ledesma, without leave to amend.

9

As for the claim as against the City, defendants argue in their reply brief that since the SIF Agreement does not provide for reimbursement of the sewer impact fees in any event, plaintiffs cannot truthfully claim that defendants owe them a sum certain. Dkt. No. 11, pp. 11-12. The court agrees that the plaintiffs' complaint does not establish that "defendant[s] is obliged in equity and good conscience to restore" the funds to plaintiffs. See Sandy 676 F. Supp. 2d at 880. Accordingly, the claim must be DISMISSED as to the City as well. However, the court cannot conclude that plaintiffs would be unable to truthfully state a viable claim if given the opportunity to amend, so, the claim is dismissed with leave to amend.

### F. Plaintiffs' Fourteenth Claim for Conversion Against All Defendants

"A cause of action for conversion requires allegations of plaintiffs' ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiffs' possession; and damage to plaintiff." PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 395 (Cal. App. 2d Dist. 2007). "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved." Id. A party must allege that it is "'entitled to immediate possession at the time of conversion.'" Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 452 (Cal. App. 3d Dist. 1997) (citing Bastanchury v. Times-Mirror Co., 68 Cal. App. 2d 217, 236 (Cal. App. 1945) (italics in original)).

Here, plaintiffs have not alleged that they were entitled to immediate possession of the prepaid sewer impact fees at the time of conversion. Nor do they specify when the conversion occurred. When plaintiffs paid the $751,298 in prepaid sewer impact fees, they did so voluntarily, in accordance with the SIF Agreement. They apparently allege that defendants converted the funds at some point after payment. But, as the SIF Agreement does not, on its face, provide for reimbursement of the fees, and plaintiffs offer no other basis for an immediate right of possession (other than, perhaps, their claim that they have demanded reimbursement of defendants), the court cannot conclude that they have stated a claim for conversion.

Accordingly, plaintiffs' claim for conversion is DISMISSED. However, the court cannot conclude that plaintiffs would be unable to truthfully state a viable claim if given the opportunity to amend, so, the claim is dismissed with leave to amend.

**CONCLUSION**

Based on the foregoing, IT IS SO ORDERED that:

1. Plaintiffs' first claim for writ of mandate is dismissed with leave to amend.
2. Plaintiffs' second claim for declaratory relief is dismissed with leave to amend.
3. Plaintiffs' seventh claim for breach of implied-in-fact contract is dismissed without leave to amend.
4. Plaintiffs' ninth and eleventh claims for breach of contract against Ledesma are dismissed without leave to amend.
5. Plaintiffs' tenth claim for promissory estoppel is dismissed without leave to amend.
6. Plaintiffs' twelfth claim for promissory estoppel is dismissed with leave to amend.
7. Plaintiffs' eighth claim for promissory estoppel is dismissed with leave to amend.
8. Plaintiffs' thirteenth claim for common counts: money had and received is dismissed without leave to amend as to Ledesma, and with leave to amend as to the City.
9. Plaintiffs' fourteenth claim for conversion is dismissed with leave to amend.

Plaintiff may file and serve upon defendants an amended complaint within 14 days of the date of this order. Plaintiff may not add new claims or new parties without first seeking leave of court. The Case Management Conference currently set for May 15, 2012 is VACATED, and will be reset by the court as needed.

Dated: May 10, 2012

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C12-00107 HRL Notice will be electronically mailed to:**

| | |
|---|---|
| Lester Hart | PaulHart@JohnsonMoncrief.com |
| Vincent Hurley | vphurley@hurleylaw.com |
| Amanda Cohen | acohen@hurleylaw.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**